# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

CURTIS LOUIS ROBINSON,

      Petitioner,

v.                                   Case No. 3:18-cv-1018-TJC-PDB

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

      Respondents.

_____

## ORDER

### I.   Status

Petitioner, Curtis Louis Robinson, an inmate of the Florida penal system, initiated this action by filing a pro se Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody. Doc. 1. Petitioner challenges a state court (Duval County, Florida) judgment of conviction for possession of hydrocodone (count one), sale or delivery of cocaine (count two), possession of less than twenty grams of cannabis (count four), and resisting officer without violence (count five).[1] Petitioner is serving a cumulative nineteen-year term of

---

[1] The trial court granted trial counsel's motion for judgment of acquittal as to count three, possession of cocaine.

incarceration. Id. Respondents filed a Response. See Doc. 17 (Resp.).[2] Petitioner replied. See Doc. 19. This case is ripe for review.

## II.   Governing Legal Principles

### A. Standard Under AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. See Marshall v. Sec'y Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). When the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained
> decision to the last related state-court decision that

---

[2] Attached to the Response are several exhibits. The Court cites the exhibits as "Resp. Ex."

> does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." Id. § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. [at 102] (citing Lockyer v. Andrade,

3

> 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v. Taylor, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

## B. Ineffective Assistance of Trial and Appellate Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish ineffective assistance, a person must show that: (1) counsel's performance was outside the wide range of reasonable, professional assistance; and (2) counsel's deficient performance prejudiced the challenger in that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's deficient performance. Strickland, 466 U.S. at 687.

This two-part <u>Strickland</u> standard also governs a claim of ineffective assistance of appellate counsel.  <u>Overstreet v. Warden</u>, 811 F.3d 1283, 1287 (11th Cir. 2016). When considering deficient performance by appellate counsel,

> a court must presume counsel's performance was "within the wide range of reasonable professional assistance." <u>Id.</u> at 689, 104 S. Ct. 2052.  Appellate counsel has no duty to raise every non-frivolous issue and may reasonably weed out weaker (albeit meritorious) arguments.  <u>See</u> <u>Philmore v. McNeil</u>, 575 F.3d 1251, 1264 (11th Cir. 2009).  "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." <u>Smith v. Robbins</u>, 528 U.S. 259, 288 (2000) (quoting <u>Gray v. Greer</u>, 800 F.2d 644, 646 (7th Cir.1986)); <u>see also</u> <u>Burger v. Kemp</u>, 483 U.S. 776, 784 (1987) (finding no ineffective assistance of counsel when the failure to raise a particular issue had "a sound strategic basis").

<u>Id.</u>; <u>see also</u> <u>Owen v. Sec'y, Dep't of Corr.</u>, 568 F.3d 894, 915 (11th Cir. 2009) ("failing to raise or adequately pursue [meritless issues on appeal] cannot constitute ineffective assistance of counsel").

To satisfy the prejudice prong of an ineffective assistance of appellate counsel claim, a petitioner must show a reasonable probability that "but for the deficient performance, the outcome of the appeal would have been different." <u>Black v. United States</u>, 373 F.3d 1140, 1142 (11th Cir. 2004); <u>see also</u> <u>Philmore v. McNeil</u>, 575 F.3d 1251, 1264-65 (11th Cir. 2009) (prejudice results only if "the neglected claim would have a reasonable probability of success on appeal"). Also,

> [a] reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052.  It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104. As such, "[a]ppellate counsel might fail to identify a mediocre or obscure basis for reversal without being ineffective under Strickland." Overstreet, 811 F.3d at 1287 (citation omitted).

For both claims of ineffective assistance of trial counsel and appellate counsel, there is no "iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010). Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

Further, "[t]he question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold."

Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, 562 U.S. at 105. As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010). "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" Daniel v. Comm'r, Ala. Dep't of Corr., 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting Strickland, 466 U.S. at 689). "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance." Id. (citing Richter, 562 U.S. at 105); see also Evans v. Sec'y, Dep't of Corr., 703 F.3d 1316, 1333-35 (11th Cir. 2013) (en banc) (Jordan, J., concurring); Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004).

## III. Analysis

### A. Ground One

Petitioner argues that his convictions for possession of hydrocodone and sale or delivery of cocaine are unconstitutional because the offenses lack a knowledge requirement. Doc. 1 at 3. According to Petitioner, these are strict liability offenses resulting in felony punishments, and the statutes outlining

these crimes, sections 893.13 and 893.101, Florida Statutes, are facially unconstitutional. Id.

Petitioner, with help from appellate counsel, raised this issue on direct appeal, asserting his convictions are unconstitutional as declared in Shelton v. Sec'y, Dep't of Corr., 802 F. Supp. 2d 1289 (M.D. Fla. 2011) (Shelton I). Resp. Ex. E at 20. The state filed an answer brief addressing the claim on the merits, Resp. Ex. F, and the First District Court of Appeal per curiam affirmed Petitioner's judgment and sentences without a written opinion, Resp. Ex. G.

Assuming the First DCA adjudicated this issue on the merits, that adjudication is entitled to deference. The Court finds the state court's adjudication of this claim is not contrary to or an unreasonable application of federal law or based on an unreasonable determination of the facts. Alternatively, this claim has no merit and is due to be denied. The Eleventh Circuit reversed the decision in Shelton I. See Shelton v. Sec'y, Dep't of Corr., 691 F.3d 1348 (11th Cir. 2012). As such, Ground One is denied.

**B. Ground Two**

Petitioner argues that the trial court committed reversible error by allowing the prosecutor to argue during closing arguments that the evidence supporting the charge of possession of hydrocodone was undisputed and uncontradicted. Doc. 1 at 3.

For context, the Court summarizes the relevant closing argument and procedural history. During its closing, the state made these statements:

> The substance is hydrocodone. Well **it is certainly undisputed that the subject of count number one, these blue pills w[ere], in fact hydrocodone**. It was testified to by the very first witness today, Katherine Bible. She got up on the stand and said this is what I do, I test things, and this was hydrocodone. It's what they do. That's their job.
>
> Their stand[ard] operating procedure is to look at them, make sure they're all consistent, their markings are consistent, that the pills are the same, select randomly among the group and test them. Their standard procedures call for testing 1, even though there [are] 30 some odd pills, but she tested 4. She did four times more than she actually needed to according to their standard procedures, tested these and found they're hydrocodone, and all the pills are the same. They're all the same, so it's hydrocodone. There is no evidence to suggest that it's not.
>
> . . . .
>
> You'll also be asked to make a determination on which area within trafficking this falls. You'll be asked was it 4 to 14 grams, 14 to 28 grams or 28 grams to 300 kilograms. Well, the evidence that's before you today is that the hydrocodone that this defendant tossed into the grass was 30.1 grams, so by the law that His Honor will instruct you on and by the facts that have been presented before you, that formula that His Honor talked about in jury selection, **the oath that you've taken requires you to return a verdict if you find him guilty of trafficking, to 28 grams or more, because there is no evidence to suggest that** --

Resp. Ex. C at 389-90 (emphasis added). Trial counsel then objected to the state's characterization of the evidence as undisputed, arguing it amounted to improper burden shifting because Petitioner did not testify or present any evidence. Resp. Ex. C at 390-91. The state responded to the objection, asserting that the comment about the weight of the hydrocodone came directly from state witness testimony, and that trial counsel did not challenge that testimony on cross-examination. Id. at 392. The trial court then ruled as follows:

> The state has the right to comment, if they feel like it's an issue in the case, they have the right to comment that you didn't get the expert to come offer an opinion that those grams were established, so since we're – that specifically they've got the right to do that, and that's not burden shifting, and that doesn't even raise, to me any inference at all that the defendant didn't testify and, as the State accurately pointed out, the defendant is not an expert. I haven't heard any – any proffer at all that he's an expert on how many grams those pills contain.

Id. at 394-95.

During his direct appeal, Petitioner, through appellate counsel, challenged the trial court's ruling, arguing that the prosecutor's comments amounted to reversible error. Resp. Ex. E. The state filed an answer brief arguing that the prosecutor's comments were not error but a fair comment about the irrefutable facts of the case. Resp. Ex. F at 4. The First DCA per curiam affirmed Petitioner's judgment and convictions without a written opinion. Resp. Ex. G. Assuming the First DCA affirmed the denial on the merits,

there is a qualifying state court decision. Thus, this Court considers this claim in accordance with the deferential standard for federal court review of state court adjudications.

A reviewing court must evaluate an allegedly improper comment in the context of both the prosecutor's entire argument and the trial as a whole, because "[c]laims of prosecutorial misconduct are fact-specific inquiries which must be conducted against the backdrop of the entire record." United States v. Hall, 47 F.3d 1091, 1098 (11th Cir. 1995); accord United States v. Young, 470 U.S. 1, 11 (1985) ("[A] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by doing so can it be determined whether the prosecutor's conduct affected the fairness of the trial."). Upon review of the prosecutor's closing argument and in the context of the trial record as a whole, the Court finds that these allegedly improper comments did not affect the fairness of Petitioner's trial. Instead, these comments were merely a summary of the evidence the state presented to the jury.

Detective K.A. Flanagan testified that on the day of Petitioner's arrest, Flanagan and Detective J.C. Hux were working as undercover narcotics officers engaging in buy-bust operations. Resp. Ex. C at 191-92. Flanagan contacted co-defendant Eric Cook who advised Flanagan he would contact Petitioner to obtain the requested drugs. Id. at 192-202. Flanagan followed Cook in his

vehicle to an apartment complex where a black male wearing all black clothing got into Cook's vehicle. Id. at 202. Cook then got out of his vehicle, approached Flanagan, and asked for $50 to conduct the transaction. Id. at 214. Flanagan provided Cook with $50 which police previously photocopied for identification purposes. Id. at 215. Cook returned to his vehicle and about five minutes later, approached Flanagan and handed her a piece of paper with a white powdery substance inside (state's Exhibit E). Id. at 234-35. Flanagan gave the takedown signal and Detective Adam K. Hiers, a member of the takedown team, began pursuing Petitioner, who immediately exited Cook's vehicle and began fleeing on foot. Id. at 331. Hiers witnessed Petitioner throw something on the ground. Id. Following Petitioner's arrest, officers retrieved the items thrown on the ground – notably, a bag of blue pills (state's Exhibit F), marijuana (state's Exhibit H), and a bag of white powder (state's Exhibit G). Id. at 242, 316. Officers also found $30 of the marked money from the transaction in Petitioner's pocket upon arrest. Id. at 283.

Florida Department of Law Enforcement analyst Katherine Bible testified that she weighed and analyzed state's Exhibit F (the bag of blue pills) and determined that the Exhibit contained 42 pills that were consistent in shape, color, texture, and size, and weighed 30.1 grams. Resp. Ex. C at 167-70. Under standard operating procedure, because all the pills appeared to be identical, she tested four of the pills and determined they all contained

12

hydrocodone. Id. at 168-69. Bible also tested the substance found in state's Exhibit E (the white powdery substance hand delivered to Flanagan during the transaction) and determined it was cocaine weighing 0.2 grams. Id. at 168. The state's closing arguments were merely a summary of that testimony. Thus, upon review of the record, this Court finds that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts given the evidence presented in the state court proceedings. Ground Two is due to be denied.

### C. Ground Three

Petitioner alleges that his appellate counsel was ineffective for failing to argue on direct appeal that the trial court erred in denying trial counsel's request to strike from evidence the state's Exhibit G (a bag containing a white powdery substance that Petitioner discarded during his attempt to flee arrest). Doc. 1 at 8. According to Petitioner, trial counsel objected to the state's Exhibit G because the state identified the Exhibit as cocaine but failed to present evidence that an expert tested the substance. He also contends that the trial court ultimately granted counsel's request for a judgment of acquittal as to the possession of cocaine charge (count three), and thus the evidence, Exhibit G, which the state intended to use to support that charge, should have been

entirely excluded from the jury's consideration. For context, the Court provides a relevant summary.

Before Flanagan's trial testimony, trial counsel objected to the state's potential introduction of Exhibit G. Resp. Ex. C at 203-11. Trial counsel stated that the state intended to introduce Exhibit G to support count three, the possession of cocaine charge, and further explained that the state had presented other evidence of cocaine (state's Exhibit E) to support the sale or delivery of cocaine charge and that Bible testified she tested Exhibit E and confirmed its illicit nature. However, because the substance in state's Exhibit G was never tested, trial counsel argued it must be excluded as substantive evidence supporting the separate possession of cocaine charge. The trial court agreed with trial counsel's argument that without expert testimony proving the substance was in fact cocaine, the state could not admit the evidence as substantive evidence of guilt supporting that charge. The trial court also stated that it would be inclined to grant a motion for judgment of acquittal on the possession of cocaine charge if the state could not prove that fact. Id. at 207. The trial court explained, however, that since the state intended to present evidence that Petitioner threw the bag containing the white substance (Exhibit G) while fleeing and police collected it as evidence related to the offenses, it was relevant and could be introduced as circumstantial evidence supporting the other drug offenses. Id. at 207-09. Thereafter, during Flanagan's trial

testimony, the state submitted Exhibit G as evidence, eliciting testimony that Petitioner had thrown the evidence during his attempt to flee and that police saw Petitioner throw the bag, which they later collected from the ground along with a bag of hydrocodone and marijuana. Id. at 234, 314, 321.

Petitioner now argues that appellate counsel should have challenged on direct appeal the trial court's ruling and admission of Exhibit G. Doc. 1 at 8. Petitioner raised this claim of ineffective assistance of appellate counsel in a petition filed with the First DCA. Resp. Ex. U. The First DCA issued a one-line order denying the petition "on the merits." Resp. Ex. X. The First DCA's adjudication of this claim is entitled to AEDPA deference. And the Court gives considerable deference to appellate counsel's strategic decision of selecting the issue or issues to raise on appeal. The danger of raising weaker issues in a "kitchen-sink" approach is that it detracts from the attention an appellate court can devote to the stronger issues and reduces appellate counsel's credibility. See Miller v. Keeney, 882 F.2d 1428, 1434 (9th Cir. 1989); see also McBride v. Sharpe, 25 F.3d 962, 973 (11th Cir. 1994). Thus, effective appellate attorneys "will weed out weaker arguments, even though they may have merit." Philmore, 575 F.3d at 1264; see also Overstreet, 811 F.3d at 1287. Appellate counsel's failure to raise a meritless or weaker issue does not constitute deficient performance. See Brown v. United States, 720 F.3d 1316, 1335 (11th Cir. 2013) (citing Jones v. Barnes, 463 U.S. 745, 754 (1983)); Owen, 568 F.3d at 915.

Prejudice results only if "the neglected claim would have a reasonable probability of success on appeal." Philmore, 575 F.3d at 1264-65.

Initially, "[a]s a general rule, a federal court in a habeas corpus case will not review the trial court's actions concerning the admissibility of evidence," because the state court "has wide discretion in determining whether to admit evidence at trial[.]" Alderman v. Zant, 22 F.3d 1541, 1555 (11th Cir. 1994); see also Baxter v. Thomas, 45 F.3d 1501, 1509 (11th Cir. 1985) (federal habeas corpus is not the proper vehicle to correct evidentiary rulings); Boykins v. Wainwright, 737 F.2d 1539, 1543 (11th Cir. 1984) (federal courts are not empowered to correct erroneous evidentiary rulings in state court unless rulings deny petitioner fundamental constitutional protections). Thus, Petitioner's underlying challenges to the state's court's determination on the admissibility of Exhibit G are not generally proper for this Court's consideration.

In any event, even assuming such challenges are proper in the context of Strickland, Petitioner cannot show the required prejudice. Indeed, the trial court granted Petitioner's motion for judgment of acquittal as it applied to the possession of cocaine charge for which the state intended Exhibit G to support. Although Exhibit G was relevant because it was evidence collected from the crime scene, even if the trial court granted Petitioner's request to exclude the evidence, such exclusion would not have affected the admissibility of the

16

evidence supporting the other charged offenses for which Petitioner was ultimately convicted. As such, Petitioner cannot demonstrate that but for appellate counsel's alleged error, the outcome of his trial would have been different. Accordingly, upon review of the record, this Court finds that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts given the evidence presented in the state court proceedings. Ground Three is denied.

### D. Ground Four

Petitioner argues that his appellate counsel was ineffective for failing to raise on direct appeal a claim that trial counsel was ineffective for failing to object to the admission of evidence only pertaining to crimes his co-defendant committed. Doc. 1 at 9. According to Petitioner, during trial, trial counsel questioned Flanagan about marijuana and a wooden pipe that co-defendant Cook possessed during the incident. Id. Petitioner also contends that the state admitted the marijuana and wooden pipe into evidence as state's "exhibit 9 and 10," and questioned Cook at trial about the evidence and Cook admitted he had marijuana and a pipe on his person when he was arrested. Id. Petitioner argues that this testimony and evidence were irrelevant to the charges for which Petitioner faced and the prejudice of their admission outweighed any probative value. Id.

17

Petitioner raised this claim of ineffective assistance of appellate counsel in a petition filed with the First DCA. Resp. Ex. U. The First DCA issued a one-line order denying the petition "on the merits." Resp. Ex. X. The First DCA's adjudication of these allegations is entitled to AEDPA deference. In applying such deference, the Court notes that in Florida, ineffective assistance of trial counsel claims are generally not cognizable on direct appeal unless under "rare" circumstances that are not present here. See Robards v. State, 112 So. 3d 1256, 1265-57 (Fla. 2013) (holding that ineffective assistance of trial counsel claims may be treated on the merits on direct appeal where "(1) ineffectiveness is apparent on the face of the record, and (2) it would be a 'waste of judicial resources to require the trial court to address the issue.'"). Thus, appellate counsel cannot be ineffective for failing to raise a claim that would not have been cognizable on direct appeal.

Further, even if this claim were cognizable on direct appeal, a review of the record shows trial counsel elicited testimony about Cook's possession of marijuana to reduce Petitioner's culpability as it related to the marijuana Petitioner threw while fleeing police and to show that such evidence should only be attributed to Cook rather than Petitioner. Resp. Ex. C at 257. Further, during his trial testimony, Cook admitted he had marijuana and a pipe on his person during the transaction and the record is clear that such evidence was at all times associated with Cook. Id. at 292. Thus, upon review of the record, the

Court finds that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts given the evidence presented in the state court proceedings. Ground Four is due to be denied.

### E. Ground Five

Petitioner asserts that his trial counsel was ineffective for permitting impeachment evidence to be used as substantive evidence of guilt. Doc. 1 at 15. Petitioner contends that trial counsel tried to impeach certain state witnesses using narcotic incident reports, police reports, and arrest and booking reports, but the state and trial counsel then referenced these reports throughout their closing arguments. Id. According to Petitioner, trial counsel should have requested that the jury be instructed on the limited use of this impeachment evidence and her failure to do so resulted in the jury relying on this hearsay evidence as substantive evidence of guilt that corroborated the state's version of events. Id.

Petitioner raised this claim in his Florida Rule of Criminal Procedure 3.850 motion for postconviction relief. Resp. Ex. K at 2. The trial court denied the claim, finding the following:

> In this ground, Defendant alleges counsel was ineffective for allowing impeachment evidence to be used as substantive evidence of guilt. Specifically,

Defendant maintains counsel was deficient because she never requested that the Court instruct the jury on the limited use of impeachment evidence. To support this contention, Defendant states the jury became confused and was misled on the improper use of the narcotic incident reports, police reports, and arrest and booking reports during impeachment of several detectives. Defendant also cites to the questions the jury submitted to the Court during deliberations. Defendant further avers the jury was permitted to rely on hearsay evidence to improperly corroborate the State's theory of prosecution or otherwise enhance the State's case with evidence that was not even sent back to the jury room during deliberations.

The record shows the jurors were properly instructed on weighing credibility, and as the fact-finder, it was the jury's duty to weigh the credibility of all the witnesses and evidence presented. (Ex. E.) Counsel attempted to cast doubt on the testimony of the detectives by impeaching them over details they transcribed in various reports to show inaccuracies in their police work. (Ex. F.) Thus, counsel cannot be held ineffective for failing to request a limiting instruction on impeachment evidence when it is clear from the record that counsel utilized that technique to cast doubt on the State's case.

Importantly, upon a thorough review of the closing arguments, neither the State nor trial counsel improperly relied on the impeachment evidence as substantive evidence of guilt. (Ex. F at 380-430.) Instead, they detailed for the jury the issue of credibility with the witnesses. Moreover, the reports were never entered into evidence, thereby refuting Defendant's hearsay claims. As for the questions the jury asked during deliberations, the Court responded that it cannot answer any questions of credibility, as that duty belongs to the jury only and no one else. (Ex. F at 471-72.) As such, the Court finds Defendant failed to show that counsel's performance was outside the

> wide range of reasonable professional assistance under
> Strickland and denies Ground One.

Resp. Ex. K at 548-49. Petitioner appealed and the First DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. O.

The Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. In applying such deference, the Court notes that trial counsel discussed the subject reports during cross examination to impeach relevant state witnesses. Resp. Ex. C at 251, 252, 258, 333, 336, 337, 338. These reports were not admitted into evidence nor were they submitted for the jury's consideration during deliberations. Although the jury asked a question about "which report carries more credibility," id. at 470, the trial court and the parties agreed that the trial court could not answer that question because those reports were not evidence but merely factors the jury could consider when conducting its duty to weigh each witnesses' credibility, id. at 471. Considering the trial court's answer to the jury's question and the standard jury instructions that the trial court used, Petitioner cannot satisfy either prong of Strickland. The Court finds that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts

given the evidence presented in the state court proceedings. Ground Five is due to be denied.

### F. Ground Six

Petitioner again argues that trial counsel was ineffective for failing to request a limited jury instruction on the use of impeachment evidence, relying on the facts as alleged in Ground Five above. Doc. 1 at 16. Petitioner raised this issue in his Rule 3.850 motion, and the trial court denied the claim, finding as follows:

> Defendant alleges ineffective assistance of counsel for failing to move for a limiting instruction on the use of impeachment evidence and relies on the facts as presented in Ground One. Defendant argues the jury should have been instructed that it was impeachment evidence and it was only to be used for evaluating credibility of witnesses, and not as substantive evidence of guilt.
>
> Based on the analysis and record cited in Ground One above, the Court denies Ground Two. Additionally, the record shows the jurors were properly instructed on weighing credibility. (Ex. E.) As such, counsel cannot be held to be deficient. Accordingly, Defendant is not entitled to relief.

Resp. Ex. K at 549. Petitioner appealed and the First DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. O.

The Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications. For the reasons discussed in Ground Five, the Court finds that the state court's adjudication of

22

this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts given the evidence presented in the state court proceedings. Ground Six is due to be denied.

## G. Ground Seven

Petitioner asserts that trial counsel was ineffective for failing to investigate and call a witness to testify at trial that Petitioner's fingerprints were not found on the plastic bags that police allegedly found near the path Petitioner took when trying to flee. Doc. 1 at 17. According to Petitioner, but for trial counsel's failure, "there exists a real likelihood that, once the jury would have discovered that [] Petitioner was not the owner or possessor of said evidence, the jury would have issued an acquittal." Id.

Petitioner raised this claim in his Rule 3.850 motion. The trial court denied the claim, finding the following:

> Defendant claims ineffective assistance for counsel's failure to investigate and call a witness to verify Defendant's fingerprints were not on the evidence. Defendant maintains counsel should have investigated and called a witness who would testify that Defendant's fingerprints were not on any of the bags that contained incriminating evidence. Defendant also argues he suffered prejudice because counsel's inaction denied him an opportunity to prove to the jury that he had never possessed nor touched the baggies that contained the incriminating evidence.

Upon a review of the State's Response, in conjunction with the record attachments provided with said Response, this Ground is denied. (State Resp. February 22, 2016 at 8-11); see Barnes, 38 So. 3d at 219-20. Notably, there was overwhelming evidence against Defendant at trial. Detective Flanagan testified she engaged in a buy-bust operation on January 27, 2011. (Ex. F at 192.) Law enforcement made contact with Mr. Cook and followed him in a separate vehicle to his "spot" at the Timuquana apartment complex. (Ex. F at 201, 248, 259.) Detective Flanagan testified she observed a black male, later identified as Defendant, enter the passenger side of Mr. Cook's truck. (Ex. F at 201-02.) Mr. Cook retrieved fifty dollars from Detective Flanagan, which had been photocopied for identification purposes, and went back to his truck. (Ex. F at 214-15, 250, 269, 274.) According to testimony at trial, Mr. Cook returned to the undercover vehicle moments later with cocaine. (Ex. F at 215, 253, 269, 275.) Detective Flanagan gave the takedown signal, and the takedown team responded. (Ex. F at 216.)

Detective J.C. Hux ("Detective Hux") testified he saw the man in the passenger side of Mr. Cook's truck flee. (Ex. F at 270.) Detective A.K. Hiers ("Detective Hiers") testified he saw Defendant run from the scene. (Ex. F at 329.) Detective Hiers testified that while he was pursing Defendant, he saw Defendant throw something on the ground. (Ex. F at 329.) Detective Hiers further testified that he informed the other officers that he saw Defendant drop something and gave a location. (Ex. F at 330-31.) Detective B.J. Sawyer ("Detective Sawyer") also testified he pursued Defendant and saw Defendant throw several items on the ground. (Ex. F at 343.) Detective Sawyer testified that he searched Defendant when he was apprehended and found thirty dollars of the "buy money" in Defendant's front pocket. (Ex. F at 344.) Detectives also found narcotics on the ground. (Ex. F at 314, 321-22.) Notably, Detective Hollins testified he did not believe the bags had been on the ground for very long because

24

> the grass was wet and the bags were dry. (Ex. F at 315-17.) As such, Defendant fails to demonstrate any prejudice under <u>Strickland</u> for counsel's failure to have the bags tested for fingerprints given the overwhelming evidence at trial that he threw the bags on the ground. Defendant is not entitled to relief.

Resp. Ex. K at 552-54. Petitioner appealed and the First DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. O. The Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications.

During her cross-examination of FDLE analyst Bible, trial counsel elicited testimony that Bible did not test the baggies containing the drugs for fingerprints nor any other form of DNA evidence during her analysis. Resp. Ex. C at 173. As such, the jury was presented with the testimony that Petitioner now alleges any potential defense witness would have testified to. Nevertheless, the jury found Petitioner guilty of the offenses. Petitioner cannot show that but for trial counsel's alleged failure the outcome of his trial would have been different. Accordingly, upon review of the record, this Court finds that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts given the evidence presented in the state court proceedings. Ground Seven is due to be denied.

## H. Ground Eight

Petitioner contends that trial counsel was ineffective for failing to impeach Detective Sawyer with his prior inconsistent statements about witnessing Petitioner throw incriminating evidence as Petitioner ran from police. Doc. 1 at 18. Petitioner raised this claim in his Rule 3.850 motion. Resp. Ex. K at 15-16. The trial court denied the claim, finding as follows:

> Defendant claims counsel was ineffective for failing to impeach law enforcement with inconsistent statements made during depositions. Specifically, Defendant cites to the allegedly conflicting statements made by Detective Sawyer in his deposition compared to his testimony at trial. At trial, Detective Sawyer testified he saw Defendant throw something when he started to turn the corner of the building. Defendant lists portions of Detective Sawyer's deposition, however, where Detective Sawyer states that he lost sight of Defendant for a couple of minutes when he turned the corner of the building. Detective Sawyer later states that when he turned the corner of the building to face Defendant, he saw Defendant throw something.
>
> The Court finds counsel was not ineffective for failing to impeach Detective Sawyer based on the deposition statements cited in Defendant's Motion. Detective Sawyer stated during his deposition and at trial that he witnessed Defendant throw items to the ground when he ran from police. As such, counsel could not impeach Detective Sawyer's statements as they were not inconsistent. Moreover, the record shows Detective Hiers testified Defendant was running behind the apartment complex and threw something on the ground. (Ex. F at 329.) As such, the Court finds that even if counsel had attempted to impeach Detective Sawyer with his deposition testimony, Defendant fails

to show prejudice under <u>Strickland</u>. Accordingly, Defendant is not entitled to relief.

Resp. Ex. K at 555-56. Petitioner appealed and the First DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. O. The Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications.

In his Petition, Petitioner summarizes the relevant portion of Sawyer's deposition and trial testimony that are allegedly inconsistent. Doc. 1 at 18. The statements, however, are not substantially different, and thus trial counsel was not deficient for failing to impeach Sawyer with the prior statement. Further, absent Sawyer's trial testimony, Deputy Adam Hiers also testified at trial that he saw Petitioner throw something during his pursuit of Petitioner. Resp. Ex. C at 329. Accordingly, upon review of the record, this Court finds that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts given the evidence presented in the state court proceedings. Ground Eight is due to be denied.

## I. Ground Nine

Petitioner alleges that trial counsel was ineffective for failing to move to suppress evidence of the money because "the [s]tate never provided evidence to

legally establish that the money found on Petitioner was the money law enforcement allegedly recorded and used for the buy." Doc. 1 at 20. Petitioner raised this claim in his Rule 3.850 motion. Resp. Ex. K at 20. The trial court denied the claim, finding the following:

> Defendant claims ineffective assistance based on counsel's failure to move to have evidence regarding the money suppressed from the jury's consideration when it was never legally linked to Defendant. Specifically, Defendant contends counsel "should have moved to have the evidence regarding the money suppressed from the jury's consideration when considering it was never legally linked to Defendant," and further argues that "the State never provided evidence to legally establish that the money found on Defendant was the money law enforcement allegedly recorded and used for the buy." Defendant admits there were photographs and testimony from law enforcement officers who allegedly recorded the serial numbers of the money, but states no one from JSO testified or provided any physical evidence to legally establish that the money recovered was the same money used for the buy.

> The record refutes Defendant's claim in that the money was linked to Defendant. The money exchanged between Mr. Cook and Defendant had been marked for a buy-bust operation and thirty of the fifty dollars was found in Defendant's possession. (Ex. F at 214-16, 275-79, 283.) Mr. Cook testified that he gave the marked bills to Defendant to buy cocaine, and that Defendant gave him twenty dollars for gas for Mr. Cook to take him somewhere. (Ex. F at 293-95.) Detective Charles Humphrey testified at trial that the money recovered from Defendant was verified to be the money that was used in the undercover sale.[](Ex. F at 282-83.) Even if the money had been excluded, Defendant cannot establish prejudice as there would still be sufficient evidence to convict him within the record. Detective

Flanagan testified she engaged in a buy-bust operation on January 27, 2011. (Ex. F at 192.) Detective Flanagan testified that she observed a black male, later identified as Defendant, enter the passenger side of Mr. Cook's truck. (Ex. F at 201-02.) According to testimony at trial, law enforcement saw Defendant hand Mr. Cook a bag. (Ex. F at 230, 250.) Moments later, Mr. Cook returned to the undercover vehicle with cocaine. (Ex. F at 215, 253, 269, 275.) Detective Flanagan gave the takedown signal, and the takedown team responded. (Ex. F at 216.)

Detective Hux testified he saw the man in the passenger side of Mr. Cook's truck flee. (Ex. F at 270.) Detective Hiers testified he saw Defendant run from the scene. (Ex. F at 329.) Detective Hiers further testified that while he was pursing Defendant, the Detective saw Defendant throw something on the ground. (Ex. F at 329.) Detective Hiers stated that he informed the other officers that he saw Defendant drop something and gave a location. (Ex. F at 330-31.) Detective Sawyer also testified he pursued Defendant and saw Defendant throw several items on the ground. (Ex. F at 343.) Detectives found narcotics on the ground in the specified location. (Ex. F at 314, 321-22.) As such, even without the money, there was over[whel]ming evidence at trial. Defendant is not entitled to relief.

Resp. Ex. K at 559-61. Petitioner appealed and the First DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. O. The Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications. Upon review of the record, this Court finds that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable

29

determination of the facts given the evidence presented in the state court proceedings. Ground Nine is due to be denied.

### J. Ground Ten

Petitioner argues that trial counsel was ineffective for failing to move to suppress the following evidence: (A) the marijuana, the hydrocodone, and the unknown white substance; (B) Cook's marijuana and pipe; and (C) 0.5 grams of cocaine. Doc. 1 at 21-26. Petitioner raised these issues in his Rule 3.850 motion. Resp. Ex. K at 40-45. The trial court denied the claim, finding the following:

> Defendant alleges counsel was ineffective for failing to challenge the sufficiency of the evidence before it was admitted and by failing to file motions to suppress evidence not connected to Defendant.
>
> Initially, the Court notes that Defendant may not challenge the legal sufficiency of the evidence in a 3.850 motion by couching it in terms of ineffective assistance of counsel claim. See Arbelaez v. State, 775 So. 2d 909, 915 (Fla. 2000). Even considering the claims, the Court finds Defendant is not entitled to relief, for the reasons set forth below.
>
> When a defendant alleges counsel was ineffective for failing to litigate a Fourth Amendment claim, the defendant must also prove the Fourth Amendment claim is meritorious and that a motion to suppress based on the claim would have been granted and the evidence would have been suppressed. Kormondy v. State, 983 So. 2d 418, 429-30 (Fla. 2007); Zakrzewski v. State, 866 So. 2d 688,694 (Fla. 2003).

A. *Unknown Substance, Marijuana, and Hydrocodone*

Defendant argues that although bags of [an] unknown substance[], marijuana, and hydrocodone pills were found on the ground in the grass of the area he ran through, no witness could identify what Defendant threw down. A search of the area revealed a bag containing an unknown substance, bags of marijuana, and a bag of hydrocodone pills but as no fingerprints were found on the bags, Defendant contends that this evidence was inadmissible because it could not be shown in any way to have ever been in Defendant's possession and the chain of custody was broken.

The Court finds counsel was not ineffective for failing to object to or file a Motion to Suppress the substances recovered from the grass. As to Defendant's allegation that the[] items were never in his possession, there was evidence at trial that he possessed these items. Mr. Cook testified that Defendant possessed and sold to him cocaine from a plastic bag for fifty dollars. (Ex. F at 284-97.) Detective Hiers testified that following the drug exchange, while he was pursing Defendant, the Detective saw Defendant throw something on the ground. (Ex. F at 329.) Detective Sawyer testified he pursued Defendant and saw Defendant throw several items on the ground. (Ex. F at 343.) Detective Sawyer testified that he searched Defendant when he was apprehended and found thirty dollars of the "buy money" in his front pocket. (Ex. F at 344.) Detectives also found narcotics on the ground. (Ex. F at 314, 321-22.)

Next, Defendant maintains the chain of custody was broken because different detectives searched the area a period of time after Defendant's arrest. According to testimony at trial, Defendant was arrested after a short pursuit by Detective Hiers a short distance away in a parking lot near the fence that Defendant jumped just after he threw the bags to the ground. (Ex.

F at 328-31.) Detective Hollins testified that he and Detective Hiers chased Defendant behind the building. (Ex. F at 313.) Detective Hiers further testified that he informed the other officers that he saw Defendant drop something and gave a location. (Ex. F at 330-31.) Detective Hollins testified he did not believe the bags had been on the ground for very long because the grass was wet and the bags were dry. (Ex. F at 315-17.) Furthermore, counsel thoroughly cross-examined law enforcement to create doubt as to how long the drugs had been on the ground. (Ex. F at 322-24.)

Notably, Defendant admitted that he participated in the drug deal to law enforcement, and stated that the drugs found on the ground belonged to him. (Ex. M.) Accordingly, based on the testimony presented at trial in conjunction with statements made by Defendant, there was no reasonable basis for counsel to object or file a motion to suppress, as there was evidence [] that these items had been in Defendant's possession and that law enforcement recovered the items from the ground within a short time after Defendant's arrest. Defendant is not entitled to relief.

### B. *Co-Defendant's Marijuana and Pipe*

Defendant maintains counsel knew or should have known that the evidence of Mr. Cook's marijuana and pipe were irrelevant to his case. Defendant contends that this evidence was prejudicial in this case because it was evidence of other crimes.

The Court finds counsel was not ineffective for failing to make a meritless objection. As discussed in the State's Response, the marijuana and pipe found on Mr. Cook were necessary to establish the entire context of the instant offense. See generally State v. Rambaran, 975 So. 2d 519, 524 (Fla. 3d DCA 2008). Specifically, that Mr. Cook knew how to obtain drugs because he had drugs on his person. (Ex. F at 290-92.) The Court also

adopts the additional arguments contained within the State's Response, in conjunction with the record attachments provided with said Response. (State Resp. February 22, 2016 at 14-19); see Barnes, 38 So. 3d at 219-20. Accordingly, Defendant is not entitled to relief.

## C. .5 Grams of Cocaine

Defendant maintains counsel was ineffective for failing to challenge the use of the .5 grams of cocaine as evidence. Defendant alleges that counsel knew or should have known that some of the cocaine evidence was consumed during the testing process and, because the State admitted .5 grams of cocaine at trial, it was clear that tampering occurred with the cocaine evidence.

Upon a review of the State's Response, in conjunction with the record attachments provided with said Response, this allegation is denied. (State Resp. February 22, 2016 at 14-19); see Barnes, So. 3d at 219-20.

## Conclusion

Defendant has failed to prove his Fourth Amendment claim is meritorious, that such a motion to suppress would have been granted, and that such evidence would have been suppressed. Based on all the evidence presented, the jury was free to draw a logical inference that the bags containing drugs belonged to Defendant, that Defendant sold drugs to the undercover detectives through Mr. Cook, who testified at trial about the details of the exchange, and that certain bags tested positive as cocaine and hydrocodone by FDLE. (Ex. F.)

Based on the record and evidence presented, the Court finds Defendant failed to prove a motion to suppress on these grounds would have been granted and evidence suppressed. Furthermore, counsel stated

> during a <u>Nelson</u> hearing that she filed a motion to
> suppress and felt that was the only appropriate motion
> to suppress to file. (Ex. K at 8.) The Court finds
> Defendant fails to prove the two-prong test under
> <u>Strickland</u>. As such, the Court denies Ground Fifteen.

Resp. Ex. K at 569-73. Petitioner appealed and the First DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. O. The Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications.

Police witnessed Petitioner throwing the hydrocodone, marijuana, and the bag containing the white powdery substance while he ran from police. Cook's testimony about his own possession of marijuana provided context and amounted to relevant evidence for which the jury could consider when evaluating his credibility as a participant in the transaction. And as to Petitioner's allegation regarding the "0.5 grams of cocaine," the state explained in its response to the Rule 3.850 motion that Petitioner was "making assumptions based upon tracking logs that were not submitted into evidence or discussed at trial." Resp. Ex. K at 306. Notably, the property storage card for the cocaine used during the sale or delivery described the item as "cocaine/powder with JSO package; 0.50gr," which was the weight of the plastic bag and the substance for which it contained. <u>Id.</u> The net weight of the cocaine without the bag was .28 grams, and after Bible extracted a sample for testing, the weight equaled 0.2 grams. <u>Id.</u> at 307. Upon review of the record, this Court

finds that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts given the evidence presented in the state court proceedings. Ground Ten is due to be denied.

**K. Grounds Eleven through Sixteen**

In Grounds Eleven through Sixteen, Petitioner restates the ineffective assistance of trial counsel claims already alleged and discussed in Grounds Five through Ten of this Order and challenges the First DCA's affirmance of the trial court's denial of those respective claims.[3] See Doc. 1 at 10-22. The Court denies these claims for the reasons already discussed.

Accordingly, it is

**ORDERED AND ADJUDGED**:

1.      The Petition (Doc. 1) is **DENIED** and this case is **DISMISSED with prejudice**.

2.      The **Clerk of Court** shall enter judgment accordingly, terminate any pending motions, and close this case.

---

[3] In their Response, Respondents construe Grounds Eleven through Sixteen of the Petition to be the same claims as those raised in Grounds Five through Ten. Resp. at 89. In his Reply, Petitioner does not challenge Respondents' construction and appears to concede this fact. See generally Doc. 19.

3.    If Petitioner appeals this Order, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[4]

**DONE AND ORDERED** at Jacksonville, Florida, this 18th day of August, 2021.



TIMOTHY J. CORRIGAN
United States District Judge

Jax-7

C:    Curtis Louis Robinson, #303717
counsel of record

---

[4] The Court should issue a certificate of appealability only if Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.